UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
AUSTIN COMMUNITY COLLEGE DISTRICT,

                    Plaintiff,

    – against –

XL INSURANCE AMERICA, INC.,

                    Defendant.
---------------------------------------------------------------------x

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Austin Community College District ("ACC"), by and through its attorneys Ford O'Brien Landy LLP, bring this lawsuit against XL Insurance America, Inc. ("XL"), and state as follows:

## NATURE OF ACTION

1. This action arises out of XL's breach of contract in refusing to fully compensate ACC under a policy of insurance, dated July 9, 2020, under policy number US00101254PR20A (the "Policy"), for at least $11,438,340.79 in losses that ACC sustained on various locations on or around February 16, 2021 (the "Losses"). To date, XL has provided a mere $500,000 to ACC for the Losses, and only offered the comparably meager sum of $1,105,453.95 to compensate ACC for remainder of the Losses. XL's excuses for not providing full compensation have rested on self-serving interpretations of two provisions in the Policy, neither of which limit ACC's recovery here.

2. ACC seeks damages, including consequential damages, for XL's breaches of contract.

**PARTIES**

3. Austin Community College District is a public community college located in and around the Austin, Texas metropolitan area. ACC is a political subdivision of the State of Texas.

4. XL Insurance America, Inc. is a Delaware corporation with its principal place of business in Connecticut.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties, per the terms of the Policy, have mutually agreed and consented to bring all suits concerning disagreements under that policy in a court of competent jurisdiction within the State of New York.

**BACKGROUND**

**A. ACC and XL Entered into the Policy**

7. ACC is a community college that serves the greater Austin, Texas metropolitan area. ACC was founded over half a century ago in 1973 with a mission to provide access to an affordable, quality college education to anyone who seeks it. In 1973, ACC opened its doors to 1,726 students. It had one campus, 177 faculty and staff, and 30 programs. ACC now serves more than 70,000 students each year across eleven campuses (including the Highland Campus), has approximately 5,000 employees, and offers over one hundred educational programs.

8.     On July 9, 2020, ACC entered into the Policy with XL. The Policy was in effect from July 1, 2020, to July 1, 2021. The Policy required ACC to pay a premium of $1,409,345, payable at inception. ACC has paid this premium.

9.     ACC has complied with all applicable terms and conditions of the Policy and/or applicable law, or is or was otherwise excused from doing so.

10.     The Policy covers, among other things, real property in which ACC "has an insurable interest, including new buildings and additions under construction at an 'insured location' … .'" The Policy applies to each "insured location" and on land within 1,000 feet of each insured location. The Policy provides for $500,000,000 per occurrence in coverage, in excess of a deductible of $100,000.

11.     The Policy includes a provision, titled "Service of Suit and Choice of Law," providing that any disputes between ACC and XL be heard within the State of New York and that New York law controls the interpretation of the Policy.

> In the event that any disagreement arises between the "Insured" and the "Company" requiring judicial resolution, the "Insured" and the "Company" each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The "Insured" and the "Company" further agree to comply voluntarily with all the requirements necessary to give such court jurisdiction. …
>
> The "Insured" and the "Company" further agree that New York law shall control the interpretation, application and meaning of this contract, whether in suit or otherwise.

### B. ACC Incurred the Losses

12.     In approximately February 2021, central Texas was hit with a major winter and ice storm known as Winter Storm Uri. On or around February 16, 2023, ACC sustained at least $11,438,340.79 in Losses at various ACC campuses, including the Highland Campus.

13.     On or about June 17, 2021, ACC provided timely notice of its claims for the Losses to XL (the "June 17, 2021 Notice"). The June 17, 2021 Notice included quotes, invoices,

and support documentation for the Losses, which provided XL with all of the information necessary to investigate, document, evaluate, and adjust the claim.

### C. XL's Refusal to Fully Compensate ACC for the Losses

14. To date, XL has only provided an advance payment of $500,000 for the Losses.

15. On August 26, 2021, Engle Martin & Associates ("Engle Martin"), a claims adjuster retained by XL, provided ACC with a letter (the "August 26, 2021 Letter") claiming that Engle Martin is "the independent adjuster retained by your insurance carrier, XL Insurance America, Inc. ("XL") in the investigation of the above-captioned claim."  This "above-captioned claim" was the property damage that ACC incurred on or around February 16, 2021, which is the subject of this litigation.  Engle Martin was thus acting as an agent for XL, its principal, when communicating with ACC.

16. The August 26, 2021 Letter stated that David Alvarez of Engle Martin, acting on behalf of XL, determined ACC's Losses were a mere $1,736,661.21, which was approximately $10 million less than the actual amount of ACC's Loss.  Engle Martin further stated that, after considering the policy deductible, previously-issued payments, and applicable withheld depreciation, the measured loss and recommended payment is $1,105,453.95.

17. In support, Engle Martin wrongfully relied on two exclusions that Engle Martin falsely claimed applied to the Losses.  First, it relied on an exclusion for "all loss or damage directly or indirectly caused by or resulting from ... extremes or changes of temperature" (the "Temperature Exclusion").  Engle Martin did not explain how this exclusion applied here, but excluded $1,248,764.07 in "[t]otal [f]reeze [d]amage."

18. Although there was a "change in temperature" that coincided with the Losses, none of the Losses were attributable to changes in temperature.  Pipes in certain buildings that

4

experienced damage failed because water in the pipes froze, resulting in the formation of ice plugs. Since water expands when it freezes, the ice plugs placed pressure on the water between them. The pressure increased until the pipes burst. Water escaped from the burst pipes, leading to the damages here. This chain of events broke the chain of causation, such that the Loss was not directly or indirectly caused by or resulting from extremes or changes of temperature, within the meaning of the Policy. The Temperature Exclusion thus does not diminish ACC's recovery in this matter.

19. Second, Engle Martin erroneously applied a sublimit of $1,000,000 to ACC's claim for $9,499,755.39 in Losses to ACC's Highland Campus. The purported basis for applying this sublimit provision that extends coverage in the Policy to property in the course of construction (the "Course of Construction Extension"). As the term "extension" suggests, the purpose of an extension is to *extend* the coverage of the Policy beyond what is already covered. As the Course of Construction Extension states: "Sublimit(s) applicable to coverage provided by this extension do not apply to the portion of INSURED PROPERTY which existed prior to commencement of such work described above," i.e.:

> **a.** As respects the "Insured's" interest in property of the type insured consisting of:
>
> > 1) new buildings or structures, including materials and supplies intended to become a permanent part thereof, while in the course of construction;
> >
> > 2) existing buildings or structures, including materials and supplies intended to become a permanent part thereof, while in the course of alteration, extension or renovation; or
> >
> > 3) machinery and equipment, including materials and supplies intended to become a permanent part thereof, while in the course of installation, erection or assembly, including Operational Testing of such machinery and equipment;

5

20. The portion of the Highland Campus that was damaged, and thus was included in the Losses, existed prior to any of these circumstances and was not in the "course of construction" within the meaning of the Policy. Therefore, the damaged property was not covered by the Course of Construction Extension.

21. XL's position regarding the Course of Construction Extension effectively turns this provision on its head. Rather than adopting the plain meaning that this extension provides coverage for property not otherwise covered under the Policy, it has used this extension to attempt to limit ACC's recovery under the Policy for Losses covered by the Policy without any need for any extension.

### D. ACC's Attempt to Resolve this Dispute in Good Faith

22. On July 22, 2022, Dr. Richard M. Rhodes, then-Chancellor of ACC, submitted a Sworn Statement in Proof of Loss regarding the Losses on or around February 16, 2021. This document identified the Losses as including $11,438,340.79 in damages and, after subtracting a $100,000 deductible and $500,000 for the amount that XL paid, submitted a claim for $10,838,340.79.

23. On April 13, 2023, Matthew English of Arthur J. Gallagher & Co., a claims advocate for ACC, submitted a letter to XL in which he explained that neither the Temperature Exclusion nor the Course of Construction Extension applied here, for reasons substantially similar to those explained above.

24. On May 12, 2023, Raymond F. Walton of XL replied to Mr. English, reiterating XL's position that the Temperature Exclusion and the Course of Construction Extension cited above apply to deny coverage to ACC here.

25. ACC has attempted to resolve this dispute by negotiating with XL. Representatives of the parties have conducted meetings and exchanged correspondence in connection with the subject matter of this litigation. As part of these negotiations, ACC and XL have entered into a series of tolling agreements to extend the applicable statute of limitations. Under the most recent tolling agreement, the applicable statute of limitations for this litigation extends until February 1, 2024.

### E. XL's Failure to Pay the Full Amount Owed Caused Damages

26. As a result of XL's wrongful refusal to pay covered losses in breach of the Policy, ACC has suffered damage and will continue to suffer damage.

27. XL's breach of contract has caused ACC to incur additional consequential damages, which were foreseeable at the time XL sold the Policy (and at the time XL breached the Policy) and which flow naturally from XL's breach.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

28. Paragraphs 1 through 27 above are repeated and realleged, as if fully set forth herein.

29. ACC has paid all premiums and has fully complied with all Policy terms.

30. XL has breached the Policy by failing to fully compensate ACC for the Losses.

31. ACC has incurred, continues to incur, and will continue to incur, damages, including consequential damages, due to XL's wrongful, unjustified, and inappropriate failure to fully compensate ACC for the Losses.

WHEREFORE, ACC seeks judgment in its favor as to Count I as follows:

    a) The entry of an award requiring XL to pay ACC all monetary damages suffered by ACC caused by XL's breaches, including, without limitation,

compensatory damages, consequential damages, pre-judgment interest, post-judgment interest, and attorneys' fees and costs; and

b) The award of such additional relief as the Court deems just and appropriate.

Dated: January 26, 2024
New York, New York

        Respectfully submitted,

        FORD O'BRIEN LANDY LLP

        By: /s/ Matthew A. Ford
            Matthew A. Ford
            Arthur Kutoroff
            275 Madison Ave. Floor 24
            New York, NY 10016
            (212) 858-0040 (main)
            mford@fordobrien.com

        *Attorneys for ACC*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ACC demands a trial by jury as to all issues properly so tried.

Dated: January 26, 2024
New York, New York

                                      Respectfully submitted,

                                      FORD O'BRIEN LANDY LLP

                                      By: /s/ Matthew A. Ford
                                            Matthew A. Ford
                                            Arthur Kutoroff
                                            275 Madison Ave. Floor 24
                                            New York, NY 10016
                                            (212) 858-0040 (main)
                                            mford@fordobrien.com

                                      *Attorneys for ACC*