

November 21, 2024

**By ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10006

      Re:   *Austin Community College District v. XL Insurance America*
               Case No. 24-CV-00603 (S.D.N.Y.)

Dear Magistrate Judge Figueredo:

      The parties to this litigation, Plaintiff Austin Community College District ("ACC") and Defendant XL Insurance America, Inc. ("XL"), respectfully submit this joint letter to address the outstanding discovery dispute that requires resolution by this Court.

## DISCUSSION

      As detailed more fully in the Complaint filed in this action [ECF No. 1], ACC seeks to recover under a policy of insurance with XL (the "Policy") for damage to its campus resulting from Winter Storm Uri, which hit Texas in February 2021. ACC submitted a claim for over $11 million in damages to XL, but XL determined that ACC was covered for only $1.1 million in losses. In rejecting the majority of the claim, XL purported to rely on two provisions of the Policy: (a) a "Temperature Exclusion" which bars coverage for "all loss or damage directly or indirectly caused by or resulting from ... extremes or changes of temperature"; and (b) a "Course of Construction Extension" limited to $1 million which applies to, among other things, "new buildings or structures … while in the course of construction."

      **Plaintiff ACC's Position**

      In the two requests set forth below, ACC seeks documents reflecting coverage positions XL has taken with respect to similar provisions in other insurance policies. XL has objected to these requests on grounds of relevance and undue burden, but ACC believes this position is untenable in light of established precedent in this District. ACC therefore respectfully requests that the Court overrule XL's objections and allow for discovery on these requests.

The Hon. Valerie Figueredo
November 21, 2024
Page 2 of 7

The requests at issue are the following:

**Request No. 12**:  Documents concerning any coverage positions XL has taken with respect to any other insurance policy issued by XL with a Temperature Exclusion

**Request No. 13**:  Documents concerning any coverage positions XL has taken with respect to any other insurance policy issued by XL with a "Course of Construction" Extension

  Documents reflecting how XL has handled prior claims involving the Temperature Exclusion and Course of Construction Extension are highly relevant to this action because they are the express grounds on which XL has disclaimed full coverage in this case.  Courts in this District have consistently ruled that documents reflecting the positions an insurer has taken with respect to parallel provisions in policies issued to other insureds are relevant and discoverable.  "To properly interpret an insurance policy, it is necessary to discern how that contract has been interpreted in the past.  To this end, documents regarding similar claims of other insureds . . . are relevant and discoverable in actions to recover insurance reimbursement."  *Mariner's Cove Site B Assocs. v. Travelers Indem. Co.*, 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005) (collecting cases and ordering insurer to provide documents reflecting the policy provision's "application to other insureds"); *see also Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1698928, at *1 (S.D.N.Y. Apr. 8, 2020) (ruling that how an insurer has "interpreted claims under similar policies in the past . . . is relevant to [the insured's] breach of contract claim," and ordering disclosure of Insurer's "claims analyses" of other "critical asset protection policies"); *Zurich Am. Ins. Co. v. Ace Am. Reins. Co.*, 2006 WL 3771090, at *1 (S.D.N.Y. Dec. 22, 2006) (granting motion to compel evidence of insurer's "handling of similar claims" as it "may well shed light on the meaning that the parties ascribed to the terms that they incorporated into the policies at issue"); *cf. Insurance Co. of N. Am. v. UNR Indus., Inc.*, 1994 WL 683423, at *1 (S.D.N.Y. Dec. 6, 1994) (requiring defendant to produce information regarding "pleadings from other [defendant] coverage actions involving the meaning and application of the exclusions relied on by [defendant] in this case"); *accord Diamond State Ins. Co. v. Utica First Ins. Co.*, 37 A.D.3d 160, 161, 829 N.Y.S.2d 465, 465 (N.Y. App. Div. 2007) (reversing denial of an insured's motion to compel production of documents reflecting other insured's claims involving the same policy exclusions, holding that the insurer's "prior interpretation of that exclusion directly reflects on whether its proffered interpretation . . . [was] in bad faith").

  XL's contention that it does not need to produce documents responsive to Plaintiff's Requests Nos. 12 and 13 because "extrinsic evidence is unnecessary to inform the interpretation of unambiguous policy terms" is mistaken.  While the principle is true as a general rule of contract construction, it is beside the point for present purposes.  The Court has made no pronouncement as yet as to what if any terms of the contract may or may not be ambiguous, and, as numerous decisions in this District make clear, in the discovery phase the insured is entitled to all information that might reasonably bear on the interpretation of the contract.  In *Brooks v. Macy's Inc.*, for example, the court granted a motion to compel discovery of evidence extrinsic to

the contract "that will be relevant if the plan is found to be ambiguous," based on the principle that "discovery concerning all relevant or potentially relevant issues is permitted, even if some of the discovery may ultimately prove unnecessary." *Brooks v. Macy's Inc.*, 2011 WL 1793345, at *2 (S.D.N.Y. May 6, 2011). And, as the court in *Mariner's Cove* observed, "to the extent that defendants maintain that evidence of other claims will not be admissible, that contention is premature. This is the discovery phase." *Mariner's Cove*, 2005 WL 1075400, at *1; *Insurance Co. of N. Am.*, 1994 WL 683423, at *1 ("Whether these potential ambiguities will ultimately be deemed sufficient to justify introduction at trial of interpretative materials will be decided *after discovery has concluded*. For present purposes, UNR has sufficiently justified its demand . . . .") (emphasis added); *Zurich Am.*, 2006 WL 3771090, at *1 (granting motion to compel evidence of insurer's "handling of similar claims" as it "may well shed light on the meaning that the parties ascribed to the terms that they incorporated into the policies at issue").

XL's reliance on *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, 2015 WL 13649824 (S.D.N.Y. June 29, 2015) is also misplaced. The discovery sought in that case was in the context of a motion for partial summary judgment, and the Court had already concluded that the policy term was not ambiguous and thus it was not necessary to resort to extrinsic evidence to construe the provision. The court's consideration -- in the alternative -- of proportionality and burden on the insurance company was also colored by the Court's view of the "relatively limited value" of the case. Here, by contrast, nothing less than $10 million in insurance proceeds is at stake.

To the extent that XL claims that the Requests are unduly burdensome to answer in light of the fact XL does not maintain its claims files by issue or exclusion, such protestations are unavailing. "A sophisticated []insurer that operates a multimillion dollar business is entitled to little sympathy for utilizing an opaque data storage system, particularly when, by the nature of its business, it can reasonably anticipate frequent litigation." *Zurich*, 2006 WL 3771090, at *2; *see also Brooks*, 2011 WL 1793345, at *2 ("[T]he burden that results from disorganized record-keeping does not excuse a party from producing relevant documents") (collecting cases). In light of such authorities, XL's claim of undue burden is not persuasive.

Finally, XL's concerns that the documents sought in the Requests contain "protected/sensitive information regarding other insureds" can readily be addressed with appropriate redactions and/or designation of these materials as "confidential" pursuant to the Confidentiality and Protective Stipulation entered into in this case. *Roc Nation*, 2020 WL 1698928, at *1 (allowing insurer to redact "identifying information about the holder of the insurance policy").

**Defendant XL's Position**

Requests Nos. 12 and 13 are objectionable because they are vague, ambiguous, overly broad, unduly burdensome, and not properly limited in time or scope. Further, the Requests seek protected/sensitive information regarding other insureds which is not discoverable in this litigation.

The documents sought are not discoverable because they are not relevant or likely to lead to the discovery of relevant information in that extrinsic evidence is unnecessary to inform the interpretation of unambiguous policy terms. *Olin Corp. v. Ins. Co. of North America*, 221 F.3d 307, 318 (2d Cir. 2000)("Under New York law, extrinsic or parol evidence may be admitted as to the meaning of the terms of a written contract when the terms are ambiguous.... Even where some ambiguity lurks in the language of the contract, a court may still construe the contract, if it can do so without reference to extrinsic circumstances or evidence."); *W.W.W. Assoc's, Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990) ("It is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.' ") (quoting *Int'l Planning v. Daystrom, Inc.*, 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969)); *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, No. 13-CV-4784-VSB, 2015 WL 13649824, at *11 (S.D.N.Y. June 29, 2015) (finding that requests seeking other claim files or identification of other cases involving asbestos related claim were not discoverable because "[e]vidence of Liberty Mutual's prior course of dealing and its prior interpretation of the phrase "during the policy period" in other cases will not be admissible to interpret the unambiguous contractual language at issue in this action."). The Court has not determined that the policy at issue is ambiguous. Accordingly, there is no basis for ACC to claim the information sought is relevant to this action.

Further, Requests Nos. 12 and 13 are vague, ambiguous, overly broad, and not limited in time or scope. The Requests seek all "Documents concerning any coverage positions XL has taken with respect to any other insurance policy issued by XL" regarding two different policy provisions. A coverage determination for a claim is based on the specific facts at issue in the individual claim and the policy language at issue. Insurance companies make hundreds of coverage decisions each day. For many coverage determinations, there are voluminous amounts of documents considered in reaching the coverage determination. As currently drafted, Requests Nos. 12 and 13 would require the production of all of the documents relied upon in making the coverage determinations because each coverage determination is inherently tied to the facts of a particular loss/claim. Moreover, the Requests seek all documents "concerning" XL's coverage positions. The Requests incorporate Local Rule 26.3(c)(7) which defines "concerning" as "relating to, referring to, describing, evidencing, or constituting." Based on this definition, ACC's requests seek not only any correspondence setting forth XL's coverage position, but any correspondence related to or referring to that position. Inherently, these Requests seek the entire claim files for those claims – many of which contains thousands, if not tens of thousands, of pages. Moreover, ACC's Requests are not limited in time. Accordingly, pursuant to ACC's Requests, XL would have to search all of the claims it has handled since it was founded in 1998.

Ultimately, identifying and producing the requested documents would not be "proportional to the needs of the case". FRCP 26(b)(1). Crucially, XL does not maintain its claim files by issue or exclusion. As the Court can imagine, there are hundreds of provisions that comprise an insurance policy and not all insurance policies contain the same provisions. Moreover, as noted above, each claim is decided on its own merits. As such, XL has never required that every policy that it issues be coded based on the types of provisions that are contained in each policy. Further, in its day-to-day operations, XL does not have a need to search its claim files for claims that involve a particular provision. As such, there does not exist a system by which XL can easily locate

and produce claim files that involved the Temperature exclusion and/or the Course of Construction Coverage Extension. As a result, a search for claims involving either the Temperature exclusion or the Course of Construction Coverage Extension would require manually filtering through every claim XL has ever considered since 1998.

Locating the relevant claim files is only the tip of the iceberg. Once the files are located, XL would be required to notify any insured where a confidentiality/non-disclosure agreement was signed by the parties to allow those insureds the opportunity to object to the production of their documents. Further, to protect the identity of its insured and to protect any attorney-client, work product privileges, or other privileges, any responsive files will have to be significantly redacted – which could take hundreds of hours on its own.

This matter is similar to *Liberty Mutual Fire Insurance Co. v. J.&S. Supply Corp.*, 13-cv-4784-VSB, 2015 WL 13649824 at *11 (S.D.N.Y. June 29, 2015), wherein the court granted the insurance carrier's protective order because "the relatively limited value of this case and the sheer volume of work and expense that would be required to identify responsive material." *Id*. (citing *Gucci Am., Inc. v. Guess?, Inc*., 790 F. Supp. 2d 136, 141 (S.D.N.Y. 2011) (finding undue burden where party would need to "manually compile lists of potentially hundreds or thousands of product styles, and then conduct lengthy financial analyses to determine the necessary sales and costs information"); *Chen-Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 303-06 (S.D.N.Y. 2012) (finding no undue burden where production would require several hundred hours of work in major employment class action with "high" financial stakes on behalf of all female financial-services employees at the associate level or higher at Goldman Sachs)). As noted by the *J&S* court:

> The concept of proportionality underlying Rule 26(b), *see Chen-Oster*, 285 F.R.D. at 303, is explicitly incorporated into the new version of the Rule that will become effective on December 1, 2015. The amended Rule 26(b)(1) will provide that material is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Order of April 29, 2015, Supreme Court of the United States, *available at* http://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf. ***My ruling that the material sought by the Modified Requests would be unduly burdensome to produce is consistent with the amended version of Rule 26(b), under which this material would not be discoverable because it is disproportionate to the needs of the case in light of the amount in controversy, the importance of the proposed discovery, and the burden of the proposed discovery.***

*Id*. at *11, n. 19 (emphasis added).

Finally, in response to ACC's claim that XL should be punished for not have a filing system that allows for searching in the exact manner that ACC desires, the *J&S* court addressed a similar argument and found:

> Although the need to manually search certain claim files and litigation files can be explained because of their age, as a general matter, it is somewhat perplexing that Liberty Mutual cannot identify with greater precision which of its claim files and litigation files relate to asbestos-related injuries, [ ] given the cost and importance of asbestos-related litigation and the repeated involvement of certain insureds in such litigation. It is not surprising, however, that Liberty Mutual is not equipped to determine without manual review of its files whether "allocation, i.e., all sums or pro rata allocation, was at issue," [ ] in resolving a particular claim. Whether there was a dispute over the appropriate method of allocation in a given case is an inherently fact-specific and somewhat complicated question. ***In light of the particular material sought by the Modified Requests, I cannot conclude that the burden to Liberty Mutual is the result of any deficiency in its filing system rather than the nature of the requests and the sheer volume of documents that would need to be reviewed in order to locate and produce responsive documents.***

*Id*. at *12 (emphasis added). Just as in *J&S*, there is no inherent deficiency in XL's filing system. Rather, it is nature of ACC's requests and the sheer volume of documents that would need to be reviewed that warrant denying ACC's request to compel production of responsive documents.

The cases cited by ACC fail to overcome the above considerations because they addressed more specific requests for a subset of claims which were readily identifiable. For example, *Mariner's Cove Site B Associates v. Traveler's Indem. Co.* addressed a demand for other claims sharing the same date of loss. 04-cv-1913-KMW-RLE, 2005 WL 1075400 at *1 (S.D.N.Y. May 2, 2005) (requesting "similar claims arising out of the September 11, 2001 attacks"). Similarly, *Roc Nation LLC v. HCC Int'l Ins. Co., PLC* addressed claims arising from a unique type of policy. 19-cv-554-PAE, 2020 WL 1698928 (S.D.N.Y. Apr. 8, 2020) (requesting claims arising from "critical asset protection policies"). *See also Insurance Co. of N. Am. v. UNR Indus., Inc.*, No. 92 Civ. 4236 (KTD), 1994 WL 683423, at *1 (S.D.N.Y. Dec. 6, 1994) (denying various requests which were not justified "either in terms of relevance or in terms of the burden that such a set of blunderbuss would impose").

Because the information sought by ACC is not relevant to this litigation and, even if it was, the burden on XL to locate and produce the requested documents substantially outweighs any purported relevance, the Court should sustain XL's objections and deny ACC's request for production.

\* \* \*

In an exchange of letters and a number of meet and confers the parties have discussed the competing legal considerations and sought to resolve this issue, but without success. The parties therefore respectfully seek the Court's assistance here in reaching a resolution of this dispute.

Respectfully submitted,

 /s/ Alexander H. Shapiro
Alexander H. Shapiro

FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016

*Counsel for Plaintiff ACC*


 /s/ Alexander Cogbill
Alexander Cogbill

ZELLE LLP
45 Broadway, Suite 920
New York, NY 10006

*Counsel for Defendant XL*